IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

EVAN KAKUGAWA,                  )     CIVIL NO. 07-00337 SOM-KSC
                               )
          Petitioner,          )
                               )
     vs.                       )     FINDINGS AND RECOMMENDATION
                               )     TO DENY PETITION WITH
ROBERT ADAMS,                  )     PREJUDICE
                               )
          Respondent.          )
_____ )

### FINDINGS AND RECOMMENDATION TO DENY PETITION WITH PREJUDICE

          Before the court is *pro se* Petitioner Evan Kakugawa's
petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The
Petition was referred to this court pursuant to Local Rule LR72.5
and 28 U.S.C. § 636(a).  Respondent has filed an Answer to the
Petition.  Although given leave to do so, Kakugawa has not filed
a Reply.  After careful consideration of the Petition, Answer,
and entire record before the court, the court FINDS that all
claims in the Petition are either actually or technically
exhausted, and RECOMMENDS that Grounds One, Two, and Four be
DENIED on their merits, while Grounds Three, Five and Six be
DISMISSED as procedurally barred from federal review.  As such,
the court Finds and Recommends that the Petition be DENIED with
PREJUDICE.

### I. Background and Procedural History

          Kakugawa seeks federal habeas relief from his state
court judgment of conviction, filed on March 9, 2004, in the

Circuit Court of the First Circuit ("circuit court"), State of Hawaii.  Kakugawa's conviction stems from a fracas that occurred on November 16, 2001, after an illegal cockfight.  Kakugawa and four others were charged with Murder in the Second Degree in violation of Hawaii Revised Statutes (Haw. Rev. Stats.) § 707-701.5 (1993)[1] (Count I); and Attempted Murder in the Second Degree in violation of Haw. Rev. Stats. §§ 707-701.5 and 705-500 (1993)[2] (Count II), for causing the death of Leon Fernandez, and attempting to cause the death of Eufracio Esmeralda.

Three of Kakugawa's co-defendants, Branden Kakugawa, Jason Yoshimura, and Don Cabinian, pleaded guilty to reduced charges of Assault in the First or Second Degree.  Kakugawa and the fourth co-defendant, Lamaar Richardson,  proceeded to

---

[1] Section 707-701.5, states in pertinent part:

(1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

[2] Under § 705-500, a person is guilty of an attempt to commit a crime if the person:

   (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

   (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.

separate trials.  Richardson was convicted by jury trial before
the Honorable Marie N. Milks (Judge Milks) of Murder in the
Second Degree and Assault in the First Degree.

After Richardson's conviction, Kakugawa waived his
right to a jury trial, and proceeded to trial before Judge Milks,
who found him guilty of Murder in the Second Degree, and
Attempted Murder in the Second Degree.  Judge Milks sentenced
Kakugawa to life imprisonment with the possibility of parole on
each of Counts I and II, to run concurrently pursuant to Haw.
Rev. Stats. § 706-656 (Supp. 1996).

Kakugawa directly appealed his conviction and sentence,
arguing to the Intermediate Court of Appeals, State of Hawaii
(ICA):

> (1) The circuit court violated his confrontation rights
> when it relied on the testimony of Brandie Gouveia
> (Gouveia), who did not testify at Kakugawa's trial.
>
> (2) The circuit court erred by using incorrect criteria
> to determine the state of mind for murder.[3]
>
> (3) There was a lack of substantial evidence that he
> had the requisite intent for accomplice liability.
>
> (4) The circuit court erred in denying his motion for

---

[3] In its oral ruling on Kakugawa's conviction, the circuit
court stated that "any reasonable person knows that a kick to the
head of a person can result in death."  Kakugawa maintained that
this showed that the circuit court was referring to the mens rea
for a reckless or negligent state of mind, not the intentional or
knowing states of mind that are required for murder and attempted
murder.

new trial.[4]

(5) The circuit erred in failing to sua sponte recuse itself.[5]

(6) Ineffective assistance of counsel because his attorney: (a) failed to fully investigate the case and cross-examine witnesses; (b) induced Kakugawa to give up his right to confront witnesses; (c) should never have advised Kakugawa to waive his right to jury trial based on Judge Milks's remark that the case "didn't sound like murder"; and (d) should have moved for recusal of Judge Milks prior to trial.

(Resp.'s Ex. O, ICA Summary Disposition Order ("ICA SDO"),

entered April 17, 2006, 2-3.)

On April 17, 2006, the ICA affirmed Kakugawa's

conviction, finding first that, although the circuit court erred

in inadvertently attributing the stipulated testimony of Shannon

Souza to Souza's girlfriend, Brandie Gouveia, this error was

harmless.  (Resp.'s Ex. O, ICA SDO at 3.)  The ICA then found

that: (1) Judge Milks's statement, that "any reasonable person

knows that a kick to the head of a person can result in death,"

was part of the circuit court's summary of findings, not its

conclusion of law as to the required mens rea for second degree

---

[4] This claim is based on Judge Milks's pre-trial statement that the case "didn't sound like murder to me," which persuaded Kakugawa's attorney, Richard Hoke, Esq., to advise him to waive his right to jury trial.

[5] Kakugawa asserted that, when Judge Milks said that the case "didn't sound like murder to me," she had clearly formed an opinion on the case.  He also alleged that, because Judge Milks presided over Richardson's trial, resulting in Richardson's conviction for murder, she lacked impartiality in determining the evidence in Kakugawa's trial.

murder; (2) there was substantial evidence that Kakugawa
possessed the requisite state of mind of "intent 'to promote or
facilitate' the commission of second degree murder"; (3) the
record clearly demonstrated that Kakugawa voluntarily waived his
right to a jury trial; (4) Kakugawa failed to show any judicial
misconduct or bias by Judge Milks's alleged failure to sua sponte
recuse herself; and (5) the record was insufficient to
demonstrate ineffective assistance of counsel. (*Id.* 3-5.)  The
ICA informed Kakugawa that its order was without prejudice to his
filing a Hawaii Rules of Penal Procedure (Haw. R. Penal P.) Rule
40 petition on his ineffective assistance of counsel claims,
which the ICA held were not sufficiently developed on the record
before the court to be determined.

Kakugawa appealed to the Hawaii Supreme Court, raising
substantially the same claims as before, except as to his
ineffective assistance of counsel claim.[6]  On June 26, 2006, the
supreme court affirmed the ICA's SDO in all respects, except as
to Kakugawa's ineffective assistance of counsel claim.  The
supreme court held that the ICA did, in fact, gravely err by
concluding that Kakugawa must demonstrate "actual, not

---

[6] On appeal to the supreme court, Kakugawa argued that the
ICA erred when it concluded that he must demonstrate "actual not
speculative prejudice," to make out an ineffective assistance of
counsel claim in any subsequent Rule 40 proceeding. (*See* Resp.s'
Ex. R, Hawaii Supreme Court Summary Disposition Order (SDO),
entered June 26, 2006, at 4.)

speculative, prejudice" to sustain his claim of ineffective assistance of counsel in a subsequent Rule 40 proceeding.  The supreme court unequivocally stated that, pursuant to *State v. Wakisaka*, 78 P.3d 317, 327, 102 Haw. 504, 514 (Haw. 2003), "*a defendant need not prove actual prejudice.*"  (Resp.'s Ex. R., Hawaii Supreme Court SDO, entered June 26, 2006, at 10-11 (emphasis in original).)  The supreme court held that the ICA erred by relying on cases holding that actual prejudice was required, cases long overruled by *Briones v. State*, 848 P.2d 966, 74 Haw. 442 (1993) and its progeny.[7]

Having considered this issue, the supreme court then considered the additional question of whether the ICA's conclusion that the record was insufficient to demonstrate ineffective assistance of counsel was correct.  The supreme court concluded that the record in Kakugawa's case was sufficiently clear, thanks to the hearing on the motion for a new trial, to show that Kakugawa's counsel was not ineffective for the reasons

---

[7] In *Briones*, the Hawaii Supreme Court expressly rejected the federal standard of review in ineffective assistance of counsel cases as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and held that "no showing of 'actual prejudice' is required to prove ineffective assistance of counsel [in Hawaii]." *Briones*, 848 P.2d at 977, & n.12 ("we have not only refused to equate the two standards cited in *Hernandez* but have also rejected the double burden imposed, as well as the remainder of *Strickland's* and its federal progeny's unduly restrictive view of what actions or omissions of counsel would constitute "ineffective assistance.")

stated by Kakugawa.  (*See* Ex. R. at 11-14.)  The supreme court
held that the ICA erred by concluding that further development of
the record was necessary on this issue, and denied Kakugawa's
ineffective assistance of counsel claim with prejudice.  The
supreme court thus vacated the ICA's SDO and affirmed the circuit
court's judgment in all respects.

Kakugawa apparently did not seek certiorari with the
United States Supreme Court, instead filing this federal petition
approximately one year later, on June 19, 2007.  Kakugawa's first
five grounds for relief are premised on the circuit court's
alleged errors in: (1) considering Brandie Gouveia's unstipulated
testimony, thus allegedly violating his right to confront a
witness against him (Ground One); (2) "using [] incorrect
criteria" to determine the mens rea for second degree murder
(Ground Two); (3) finding Petitioner guilty as charged, when
there was a lack of evidence of intent (Ground Three); (4)
denying his motion for a new trial (Ground Four); and (5) failing
to sua sponte recuse itself (Ground Five).  Kakugawa's final
ground for relief alleges ineffective assistance of counsel
(Ground Six).

## II. <u>LEGAL STANDARDS</u>

### A.   AEDPA

Under the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), habeas corpus relief may not be granted on any

7

claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)(2); *Williams v. Taylor*, 529 U.S. 362, 402-04 (2000).

"A decision is 'contrary to' federal law when a state court applies a rule of law different from that set forth" in Supreme Court holdings or when it makes a contrary determination based on "'materially indistinguishable facts.'"  *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th Cir. 2005) (quoting *Williams*, 529 U.S. at 405-06).  An "unreasonable application" occurs when the state court applies Supreme Court holdings to the facts of the petitioner's case in a manner that is "objectively unreasonable."  *Alberni v. McDaniel*, 458 F.3d 860, 863 (9th Cir. 2006).  "Clearly established federal law 'as determined by the Supreme Court, refers to the holdings, as opposed to the dicta of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Earp*, 431 F.3d at 1182 (quoting *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004)) (internal citation omitted).

**B.    Exhaustion and Fair Presentation of Claims**

Before a petitioner may bring a habeas petition to federal court all of the claims raised must be exhausted in the state courts.  28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  To do so, a petitioner must present his claims to the highest state court, to give that court a fair opportunity to rule on the merits of each and every issue sought to be raised in the federal court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987); *Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1201-02 (9th Cir. 2005).  A petitioner may present his claims either on direct appeal or in state collateral proceedings.  *See Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987).

To fully exhaust federal claims in the state court, petitioners must alert, or "fairly present" their claims as federal as well as state claims.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)); *Fields v. Waddington*, 401 F.3d 1018, 1020 (9th Cir. 2005); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001).  This "give[s]the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[,]" in the first instance.  *Duncan*, 513 U.S. at 365.

To fairly present a claim, a petitioner must make its

federal basis explicit, either by referring to specific provisions of the federal constitution or statutes, or by citing to federal case law. *Lyons*, 232 F.3d at 668, 670 (general reference to insufficiency of evidence, right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity and explicitness required to present a federal claim). This level of explicitness is required even if the federal basis of a claim is "self-evident." *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999).

It is not enough to make a general appeal to a constitutional guarantee such as "due process" or "equal protection." *Gray v. Netherland,* 518 U.S. 152, 163 (1996); *Shumway v. Payne*, 223 F.3d 982, 987-88 (9th Cir. 2000) (broad reference to "due process" is insufficient to present federal claim); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion."). Exhaustion demands more than a citation to a general constitutional provision, "detached from any articulation of the underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

**C.   Actual and Technical Exhaustion, And Procedural Default**

There are two ways that exhaustion may be accomplished. First, a petitioner may *actually* exhaust his claims by fairly

10

presenting them in a proper procedural manner, either on direct appeal or on collateral review to the state courts.

A petitioner can also *technically* exhaust state remedies by either showing that the state court explicitly denied a claim on procedural grounds, or, if the claim was never presented to the state courts, that no state remedies remain available. *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005), *cert. denied sub nom.*, *Schriro v. Cassett*, --- U.S. ----, 126 S. Ct. 1336 (2006) ("[T]he procedural default rule . . . applies . . . when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.") (citing *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted)); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

A state court's application of a procedural bar effectively exhausts the claim because "no state remedies remain available." *Kellotat v. Cupp*, 719 F.2d 1027, 1029 (9th Cir. 1983) (citing *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982)); *see also* § 2254(b)(1)(B)(i). "Because the exhaustion requirement refers only to remedies still available at the time of the federal petition, if a petitioner failed to present his claims in state court and can no longer raise them through any

11

state procedure, state remedies are no longer available and are exhausted." *Rivas v. Schriro*, No. CV-05-434-PHX-DGC (BPV), 2006 WL 987990, at *8 (D. Ariz., April 13, 2006) (citations omitted). Thus, "a procedural default may be *caused* by a failure to exhaust federal claims in state court." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) (emphasis in original) (citing *O'Sullivan*, 526 U.S. at 848 (stating that the failure to timely present three federal claims to the state supreme court resulted in the procedural default of those claims).

Procedural default arises because, pursuant to a state court's procedural rules, a return to state court to exhaust the claims would be futile. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Coleman*, 501 U.S. at 735 n.1 (stating that a claim is procedurally defaulted when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.").

### III. **DISCUSSION**

Respondent first argues that the petition should be dismissed as "mixed" because Kakugawa has not fully exhausted Grounds Three and Four. *See Rose v. Lundy*, 455 U.S. 509, 520-22 (1982) (requiring dismissal of federal habeas petition containing exhausted and unexhausted claims). Respondent then contends that Kakugawa failed to fairly present Grounds Three and Four as

federal constitutional claims to the state courts, rendering these claims unexhausted, and now procedurally defaulted in the state courts, pursuant to Haw. R. Penal P. 40(a)(3).[8]  Respondent argues that Grounds Three and Four are therefore procedurally barred from federal court review.  In the alternative, Respondent argues that all of Kakugawa's claims should be denied on their merits.

Although the court agrees that the petition should be denied, it finds that petition is, in fact, exhausted, either actually or technically, as discussed below.

**A.    Grounds One, Two, and Four are Actually Exhausted But Without Merit.**

1.    Ground One: Confrontation Clause Violation

In Ground One, Kakugawa claims that his right to confront witnesses against him as guaranteed by the Sixth

---

[8] Rule 40(a)(3) states:

*Inapplicability*. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

Amendment to the U.S. Constitution was violated.  Kakugawa raised
and fairly presented this claim as a federal issue on direct
appeal.  (*See* Petr.'s Op. Br. on Appeal at 29.)  This claim is
therefore actually exhausted.  It is not, however, ultimately
availing to Kakugawa.

Kakugawa argues that his Sixth Amendment right to
confront witnesses against him was violated when Judge Milks
apparently relied on testimony from Brandie Gouveia, who neither
testified in person nor by stipulation at Kakugawa's trial, in
reaching her decision to convict Kakugawa of murder and attempted
murder in the second degree.

The Confrontation Clause provides that "[i]n all
criminal prosecutions, the accused shall enjoy the right . . . to
be confronted with the witnesses against him."  U.S. Const. am.
VI; *Lilly v. Virginia*, 527 U.S. 116, 123 (1999).  "The main and
essential purpose of confrontation is to secure for the opponent
the opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S.
308, 315-16 (1974).

Judge Milks made the statement at issue here when she
summarized the proceedings prior to rendering her decision:

> Brandie Gouveia, Shannon Souza's girlfriend,
> and others, described Esmeralda swinging the
> log like a baseball bat, but not hitting
> anybody.
>
> She later saw the log in defendant's
> possession.  He used two hands to hoist the
> log over his head like a caveman and clubbed

14

> Esmeralda.  She further testified that
> defendant hit Esmeralda pretty hard in the
> back, boom, twice.  Esmeralda, at that point,
> was crouching, covered his head, and was
> against the fence in a fetal position.  She
> then saw the defendant hit Esmeralda one more
> time in the back of the head or the back
> while Esmeralda was still crouching.

(Resp.'s Ex. H, 4:7-19.)

As Brandie Gouveia did not, in fact, testify at Kakugawa's trial, nor was her testimony from Richardson's trial stipulated to in Kakugawa's trial, this statement, if not inadvertent and actually relied upon by Judge Milks, would present an obvious Confrontation Clause violation.

The ICA found that Judge Milks mispoke, and held that, while the "circuit court erred in attributing the stipulated testimony of Shannon Souza to his girlfriend, Gouveia, who did not testify at Kakugawa's trial. . . . this error was harmless in that there is not a reasonable probability that this error contributed to Kakugawa's conviction[.]"  (Resp.'s Ex. O, ICA SDO at 3.)

This court has read Shannon Souza's stipulated testimony,[9] and agrees that it is substantially similar to the testimony Judge Milks attributed to Brandie Gouveia.[10]  The

---

[9] *See* Resp.'s Ex. E, "Exhibit C," TR 2/6/03, 124-29.

[10] Brandie Gouveia's testimony from Lamaar Richardson's trial is not in the record before this court, and cannot be compared to Shannon Souza's testimony.

possibility that Judge Milks simply misspoke is made more apparent with reference to her statements at the hearing on Kakugawa's motion for a new trial.  There, Judge Milks stated that she "had to just rely solely on the stipulated facts and was very careful not to consider anything that might have been heard but which was not stipulated to."  (Tr. 2/6/04 at 4.)  Relying on this statement, and the similarity between Judge Milks's contested statement and Souza's testimony, the ICA's conclusion does not appear to be an objectively unreasonable determination of the facts in light of the full record before the ICA.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

This court does not rest its decision on the ICA's conclusion however, as the supreme court further correctly clarified that, even if Judge Milks improperly relied on Brandie Gouveia's testimony, that error was harmless.  In affirming the ICA, the supreme court stated:

> Assuming arguendo that the circuit court relied on the testimony of Gouveia and thus violated Kakugawa's constitutional right to confront adverse witnesses, the ICA correctly concluded that the error was harmless because the testimony of Shannon Souza, which was properly admitted by stipulation, was virtually identical to Gouveia's, and thus there is no reasonable possibility that Gouveia's testimony contributed to Kakugawa's conviction.  *See State v. Grace*, 107 Hawai`i 133, 139, 111 P.3d 28, 34 (App. 2005) (concluding that the appellate court must reverse or vacate if "there is a reasonable possibility that the evidence complained of might have contributed to the conviction")

16

(quoting *Chapman v. United States*, 386 U.S.
18, 23-24 (1967) [further citations
omitted]."

(Resp.'s Ex. R, Hawaii Supreme Court SDO at 4-5.)

Violations of the Confrontation Clause are subject to

harmless error review.  *Coy v. Iowa,* 487 U.S. 1012 (1988);

*Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986) ("[T]he denial

of the opportunity to cross-examine an adverse witness does not

fit within the limited category of constitutional errors that are

deemed prejudicial in every case."); *Chapman v. California*, 386

U.S. 18, 24 (1967); *Belmontes v. Brown,* 414 F.3d 1094, 1123 (9th

Cir. 2005).  As the Supreme Court stated in *Van Arsdall*:

> Whether such an error is harmless in a
> particular case depends upon a host of
> factors, all readily accessible to reviewing
> courts. These factors include the importance
> of the witness' testimony in the
> prosecution's case, whether the testimony was
> cumulative, the presence or absence of
> evidence corroborating or contradicting the
> testimony of the witness on material points,
> the extent of cross-examination otherwise
> permitted, and, of course, the overall
> strength of the prosecution's case.

475 U.S. 684.

Both the ICA and the Hawaii Supreme Court correctly

applied this principle, finding that, in light of the other

evidence presented at Kakugawa's trial, particularly Shannon

Souza's nearly identical testimony, but also the testimony of

Thomas Nowlin, Romeo Bulosan, Steven Bowman, and others, that any

error that may have occurred was harmless beyond a reasonable

17

doubt.  This court's independent assessment of the oral and
stipulated testimony presented at Kakugawaa's trial reveals the
same, that if there was an error and not an inadvertent
misstatement, the error had no "substantial and injurious effect
or influence in determining" Judge Milks's verdict.  *Brecht v.
Abrahamson,* 507 U.S. 619, 623 (1993); *Bains v. Cambra,* 204 F.3d
964, 977 (9th Cir. 2000) ("[T]he *Brecht* standard should apply
uniformly in all federal habeas corpus cases under § 2254.").

        The court finds that the ICA's and the Hawai`i Supreme
Court's decisions to deny Kakugawa's Confrontation Clause claim
was neither contrary to the clearly established Supreme Court
precedent forth in *Chapman* and *Van Arsdell*, nor an unreasonable
application of the facts here to that governing law.  *See* 28
U.S.C. § 2245(d)(1).  The court therefore recommends that Ground
One be DENIED with prejudice.

        2.   Ground Two: Incorrect Mens Rea

        In Ground Two, Kakugawa argues that the "Trial Court
erred using the incorrect criteria to determine the 'state of
mind for second degree murder."  (Pet. at 7.)  In support,
Kakugawa alleges that Judge Milks's statement, "that any
reasonable person knows that a kick to the head of a person can
result in death," made when she rendered her guilty verdict,
reflected a negligent or reckless mens rea, sufficient for
manslaughter but not murder.  He alleges that reliance on this

18

"incorrect" mens rea violated his right to due process.[11]

The ICA concluded that the circuit court's comment was not a statement of the governing law, but was simply the court's summary of its findings.  (Resp.'s Ex. O at 4.)  The Hawaii Supreme Court went further, and held that, even assuming arguendo that the circuit court erred in it's formulation, that error was harmless.  The supreme court stated,

> In light of the fact that there was no jury
> in the instant case that could have been
> influenced by a possibly incorrect statement
> of the law, the real question is whether
> there is substantial evidence in the record
> to support Kakugawa's convictions under the
> correct legal standards for second degree
> murder and attempted murder.

(Resp.'s Ex. R., Hawai`i Supreme Court SDO at 5 (citation

---

[11] Respondent does not argue that this claim is unexhausted, apparently recognizing that Kakugawa cited state case law that explicitly analyzed the same type of claim under federal law. *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) ("In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis."); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (*en banc*) (a claim is fairly presented when petitioner cites state case explicitly analyzing the same claim as a federal constitutional claim).
Kakugawa cited *State v. Matsuda*, 432 P.2d 888, 890 (Haw. 1967), which analyzed this type of claim under both state and federal law. Further, although unattributed in his brief, Kakugawa directly quoted *Bollenbach v. United States*, 326 U.S. 607, 614 (1946), and *Wilson v. United States*, 250 F.2d 312, 324 (9th Cir. 1957).  *Wilson* dealt with a trial court's misconception regarding an essential element of the offense in a non-jury trial.  250 F.2d at 324.  *Bollenbach* involved an erroneous jury charge.  This is sufficient to have fairly presented the federal issue to the Hawai`i courts.

omitted).)  The supreme court then determined that, in light of the evidence before the circuit court, there was "substantial evidence to support the finding that Kakugawa had the requisite (i.e., 'knowing') state of mind for second degree murder and attempted murder as a principal."  Thus, even if Judge Milks misstated the law, the evidence supported Kakugawa's conviction beyond a reasonable doubt.

A trial judge's legal error during a bench trial is reviewed using the same harmless error standard that would apply to an erroneous jury instruction.  *See Wilson v. United States*, 250 F.2d 312, 324 (9th Cir. 1957).  When a jury has been given an incorrect instruction of the law, it "requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt."  *United States v. Romo-Romo*, 246 F.3d 1272, 1274 (9th Cir. 2001).  Thus, in a bench trial where the legal error goes to an element of the offense, the reviewing court does not "become in effect a second jury to determine whether the defendant is guilty."  *Neder v. United States*, 527 U.S. 1, 19 (1999).  Rather, only "where the reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error," *id.* at 17, is the error harmless.

20

Here, the Hawai`i Supreme Court, went into a detailed analysis of the evidence presented at Kakugawa's trial, including the stipulated testimony that Kakugawa "whacked" or "clubbed" Esmeralda with a log, that the log weighed approximately twelve pounds, that Kakugawa admitted that he hit Esmeralda with the log, and kicked him when he was down.  The supreme court determined that the circuit court "could reasonably infer that Kakugawa intentionally engaged in a course of conduct known (*i.e.*, practically certain)[12] to result in Esmeralda's death." (Resp.'s Ex. R, Hawai`i Supreme Court SDO at 7 (citations omitted).)

Turning to Fernandez's death, the supreme court noted that Kakugawa conceded that he kicked and punched Fernandez, trial testimony showed that Kakugawa did so when Fernandez was already down, and did so with such force that Fernandez's head "would have traveled 'a hundred yards' had it been a football." (*Id.*)  The supreme court concluded that there was substantial circumstantial evidence from which the circuit court could have reasonably inferred that Kakugawa knew "(*i.e.* it was practically certain)" that Fernandez would die from such a kick.  (*Id.*)  In light of this evidence, the supreme court held that any possible

---

[12] Section 702-206 (1993), of the Haw. Rev. Stats., defines a knowing state of mind with respect to a result as when an actor "is practically certain that his conduct will cause such a result."

error regarding the elements of the crime was harmless beyond a reasonable doubt.

First, this court notes that in *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000), the Ninth Circuit Court of Appeals held that the *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Under the *Brecht* harmless error analysis, Kakugawa's alleged constitutional errors warrant habeas relief only if "in light of the record as a whole," the error had a "substantial and injurious effect or influence in determining the [] verdict." *Id.* at 638 (internal quotation marks omitted). Thus, Kakugawa is not entitled to habeas relief unless he can establish that the alleged error "resulted in 'actual prejudice.'" *Id.* at 637. The circuit court's possible misstatement of the law did not have a substantial and injurious effect on it's verdict, in light of the other evidence presented.

Second, this court finds that the supreme court relied on the proper standard, and its holding was neither contrary to nor an unreasonable application of Supreme Court precedent as set forth above, nor an unreasonable determination of the facts in light of the evidence presented to the circuit court. *See* 28 U.S.C. § 2254(d)(1-2). The court recommends that Ground Two be

22

DENIED with prejudice.[13]

      3.   <u>Ground Four: Motion for New Trial</u>

      In Ground Four, Kakugawa alleges that the circuit court erred by failing to grant him a new trial in the interests of justice.  Respondent argues that this claim was never fairly presented as a federal issue to the Hawaii courts, because Kakugawa neither contended that he was denied any federal constitutional right nor cited any federal cases in support of his claim.  While ostensibly true, the court nonetheless finds that this claim was fairly presented under controlling Ninth Circuit law.

      On direct appeal, Kakugawa raised this same claim, arguing that his waiver of a jury trial was not knowing, intelligent, or voluntary, because he "was wrongly led to believe that if he waived a jury, he would not be convicted of murder." (Resp.'s Ex. L at 35.)  He also argued that the circuit court should have realized that his attorney would rely on the court's stated opinion as an off the record promise or assurance.  (*Id.* 36.)

      On direct appeal, although Kakugawa never explicitly

---

     [13] The court notes that this analysis applies equally to Kakugawa's claims in Ground Three, alleging insufficiency of the evidence to prove he acted with the requisite intent for murder or attempted murder in the second degree.  The court, however, finds that Ground Three is procedurally barred from federal review, as discussed *infra*, and does not make any finding on the actual merits of Ground Three.

mentioned federal law or any specific provision in the United States Constitution, he cited to *State v. Friedman*, 996 P.2d 268, 273 (Haw. 2000).   In *Friedman*, the Hawai`i Supreme Court relied on both state and federal constitutional law to analyze whether a waiver of jury trial was knowing, intelligent, and voluntary. *Id.* at 272-73 (stating "[t]he validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law" and specifically citing the Sixth Amendment).   Both the ICA and the Hawai`i Supreme Court also relied on *Friedman* in denying this claim.   As noted above, a claim is fairly presented as a federal issue if the petitioner cites to a state case that explicitly analyzes the same claim as a federal constitutional claim.   *See Peterson*, 319 F.3d at 1158. Albeit obscurely, Kakugawa did fairly present and exhaust this claim to the Hawaii courts by citation to *Friedman*.[14]

In support of his claim for a new trial, Kakugawa states that Judge Milks "seemed to have pre-judged the matter and clearly gave Defense Counsel a signal that she had formed an opinion and thus lacked impartiality." (Pet. 11.)   Kakugawa is referring to Judge Milks's statement that "the case did not sound like murder to her." (Resp.'s Ex. K Tr. 2/6/04 at 13.)

---

[14] Kakugawa also fails to present a federal basis for this claim in his Petition, however, the court reads his claim as an inartful pro se reiteration of the claim he raised at the state court, that his waiver of jury trial was not knowing and voluntary because he relied on Judge Milks's statement.

24

"[T]he right to jury trial in serious criminal cases is a fundamental right and hence must be recognized by the States as part of their obligation to extend due process of law to all persons within their jurisdiction." *Duncan v. Louisiana*, 391 U.S. 145, 154 (1968).  The Supreme Court has held that defendants can waive their right to a jury trial only under certain conditions, when it is clear that the government has consented, the trial court has sanctioned the waiver, and the defendant has expressly and intelligently waived his or her right.  *Patton v. United States*, 281 U.S. 276, 312-13 (1930).  The burden of demonstrating that a waiver of jury trial was not valid lies with the defendant who waived it.  *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942).

The Ninth Circuit Court of Appeals has stated that the right to a jury trial may only be waived if: (1) the waiver of the right is in writing; (2) the government consents; (3) the court accepts the waiver; and (4) the waiver is made voluntarily, knowingly, and intelligently.  *United States v. Duarte-Higareda*, 113 F.3d 1000, 1002 (9th Cir. 1997) (citing Fed. R. Crim P. 23(a)).  While a written waiver creates a rebuttable presumption that the waiver was voluntary, *Duarte-Higareda*, 113 F.3d at 1003, failure to obtain written waiver does not constitute reversible error where the record reflects an express, knowing, and intelligent oral waiver of the right.  *United States v. Saadya*,

750 F.2d 1419, 1420 (9th Cir. 1985) (the only exception to the writing requirement is where the record clearly reflects that the defendant intelligently and knowingly gave express consent in open court); *see also United States v. Cochran*, 770 F.2d 850, 852 (9th Cir. 1985) ("absent a written waiver, an oral stipulation to a trial by fewer than twelve jurors pursuant to Fed. R. Crim. P. 23(b), must be accompanied by a substantial colloquy on the record to insure a voluntary, knowing and intelligent waiver.") (citing *United States v. Reyes*, 603 F.2d 69, 71 (9th Cir. 1979)).

To determine whether the waiver of the right to a jury trial is made voluntarily, knowingly, and intelligently, the trial court "should question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial and freely chooses to waive a jury." *Duarte-Higareda*, 113 F.3d at 1002; *see Cochran*, 770 F.2d at 852. The court's colloquy should "inform defendants that (1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." *Cochran*, 770 F.2d at 853. This extensive colloquy, however, is not an absolute requirement in every case, however. *Duarte-Higareda*, 113 F.3d at 1003.

It is undisputed that Kakugawa signed a written waiver. (*See* Resp.'s Ex. B, TR. 1/13/03 (Judge Milks: "Did you sign this

26

[jury waiver form]?   Kakugawa: "Yes, I did."))   *See Cochran*, 770 F.2d at 851 (holding that the district court was not required to question the defendant about his understanding of the jury waiver where he had signed a written waiver).   It is also clear that the State consented to the waiver and the circuit court accepted the waiver.

The circuit court did not stop there, however, but extensively questioned Kakugawa concerning his understanding of the waiver, as reflected below:

> Q.   At any time did Mr. Hoke put any kind of pressure on you or force you - -
>
> A.   No.
>
> Q.   - - to waive your right. You know that when you waive, you give up your right to trial by jury.
>
> A.   Yes, I do.
>
> Q.   One of the things I need for you to understand is what a jury is that you are giving up.  Can you tell me in your own words what a jury is.
>
> A.   Being judged by twelve - - twelve people.
>
> Q.   And you understand that these are people from the community?
>
> A.   Yes, I do.
>
> Q.   And, that you and Mr. Hoke would help select them?
>
> A.   Yes, I do.
>
> Q.   You know help select also means you and Mr. Hoke can strike - - there's a process by which you can excuse some of the jury in the jury box you don't wish to have serve and they would be replaced by other jurors.

A.   Yes, I do.

Q.   Did he also explain to you that when you have a
     trial with a jury of twelve people deciding the
     case that the determination whether you're guilty
     or not guilty or consideration of lesser charge
     would have to be unanimous. All twelve would have
     to agree.

A.   Yes, he did.

Q.   And, did he make it clear to you that if you
     proceed with only the court, then, there's
     basically one person deciding whether you're
     guilty or not guilty or guilty of lessers?

A.   Yes, I understand.

Q.   At any time did Mr. Hoke make any promise to you
     or any assurance to you that if you waive a jury
     that the result will be a certain result?

A.   No.

     THE COURT: The court will accept the waiver of trial by
jury.

(Resp.'s Ex. B, TR 1/13/2003.)

       This colloquy makes clear that the circuit court

carefully questioned Kakugawa to determine that his waiver was

knowing, intelligent, and voluntary.  The circuit court covered

each *Cochran* factor until it was satisfied that Kakugawa

understood exactly what his waiver of a jury trial encompassed.

A state court's determination that a defendant knowingly,

intelligently, and voluntarily waived his right to a jury trial

is a factual finding that is presumed correct under § 2254(e)(1).

*See Sumner v. Mata*, 455 U.S. 591, 591-93 (1982); *Campbell v.

Blodgett*, 978 F.2d 1502, 1507-08 (9th Cir. 1992) (per curiam).

28

Kakugawa fails to rebut the presumption that the circuit court's factual determination that he knowingly, intelligently, and voluntarily waived his right to a jury trial. 28 U.S.C. § 2254(e)(1).  The Hawai`i Supreme Court's holding affirming that determination was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor an unreasonable determination of the facts in light of the evidence presented in the circuit court proceeding.  28 U.S.C. § 2254(d).  This court finds and recommends that Ground Four be DENIED.

**B.    Grounds Three, Five, and Six are Technically Exhausted but Procedurally Barred from Federal Review.**

Respondent argues that Grounds Three and Four were not fairly presented to the state court as federal claims, and that *all* of his other claims were fairly presented.  As noted above, whit respect to Ground Four, this court disagrees.   The court further finds, after a careful review of Kakugawa's briefs on appeal, that Kakugawa failed to fairly present his claims in Grounds Three, Five, and Six as federal issues.  These claims are therefore technically exhausted, but, as discussed below, procedurally defaulted in state court and procedurally barred from federal review.

**1.    Procedural Default Pursuant to Haw. R. Penal P. 40(a)(3) and Procedural Bar in Federal Court**

As discussed *supra* n.9, under Hawai`i law, state

29

prisoners are precluded from filing petitions for post-conviction relief if the issue was either previously ruled upon or was "knowingly and understandingly" waived by the failure to raise it before trial, at trial, on appeal, or by any other means, and there are no "extraordinary circumstances" justifying the failure to raise the issue.  Haw. R. Penal P. 40(a)(3); *State v. Ng*, 93 P.3d 1181, 1184-85 (Haw. App. 2004) (holding that petitioner's ineffective assistance claims were procedurally barred under Rule 40(a)(3)); *Stanley v. State*, 879 P.2d 551, 556 (Haw. 1994) (failure to present facts to rebut the presumption that failure to raise issue [of insufficient evidence] was knowingly made, or prove extraordinary circumstances to justify such failure, waives issue for purposes of Rule 40 petition).

When a petitioner defaults his federal claim in state court pursuant to an "independent and adequate" state rule, federal habeas review on the merits is barred.  *Coleman*, 501 U.S. at 722-23; *Wainwright v. Sykes*, 433 U.S. 72, 81, 87 (1977); *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003) (finding that Hawai`i's Rule 40(a)(3) is well-established and consistently applied, and therefore, an adequate and independent ground sufficient to support a finding of procedural default).

Rule 40 is independent of federal law, firmly established, and has been regularly followed since long before Kakugawa was convicted in 2004, and after.  *See, e.g.*, *Ng*, 93

30

P.3d at 1184-85; *Hutch v. State*, 108 P.3d 988, *4 (Haw. App. 2005); *State v. Fields*, — P.3d — , 2005 WL 1274539 (Haw. App. 2005), *aff'd,* — P.3d. —, 2007 WL 2452643 (Haw. Aug. 30, 2007)(clarifying that, when a petitioner has been represented by the same counsel at trial and on appeal, there is no waiver under 40(a)(3), as there has been no reasonable opportunity to raise the issue of ineffective assistance of counsel); *Adams v. State*, 81 P.3d 394, 400-01 (2003); *Fragiao v. State*, 18 P.3d 871, 877-79 (2001); *Tachibana v. State*, 900 P.2d 1293, 1299 (1995).  Each of these cases examined Rule 40(a)(3), and upheld waiver of the claim where appropriate.

      2.   <u>Procedural Bar in Federal Court.</u>

      When a state prisoner has procedurally defaulted his federal claims in state court, federal habeas review is precluded unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in the fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Cockett*, 333 F.3d at 943. To establish cause, a petitioner must establish that "some objective factor external to the defense impeded [his efforts] to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488-89 (examples include the unavailability to counsel of a factual or a legal basis for the claim, interference by state

officials, or constitutionally ineffective assistance of counsel). Prejudice is proved by demonstrating that the alleged constitutional violation "worked to [a petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner fails to establish cause for his procedural default, the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

3.  <u>Ground Three: Insufficient Evidence of Intent</u>

In Ground Three, Kakugawa alleges the circuit court erred by finding him guilty of murder "when there was a total lack of evidence" that he acted with intent. In support, Kakugawa notes that the circuit court stated that he was not being found guilty of an intentional act, but only of a knowing act, and alleges there was no evidence adduced at his trial supporting a finding of "knowing." (Pet. 9.) Kakugawa fails to point to any constitutional provision or federal law in support of his claim.

Kakugawa raised this issue to the ICA and the supreme court. He argued that, because the State's theory against him was based on accomplice liability under Haw. Rev. Stats. § 702-222(1)(b), requiring that "a person [] act with the intent of

32

promoting or facilitating the commission of the crime," *see State
v. Soares*, 815 P.2d 428, 430 (Haw. 1991), and Judge Milks stated
at sentencing she found only "knowing not intentional conduct,"
he cannot be guilty of accomplice liability because she found no
intentional conduct.  (Resp.s' Ex. J at 13.)

In his Opening and Reply briefs on appeal, Kakugawa
relied exclusively on state statutory and case law.  (*See* Resp.'s
Ex. L, Petr.'s Op. Br. 33-34; Ex. N, Petr.'s Reply Br. 4-6.)  In
his application for certiorari, he cited to no law whatsoever,
state or federal.  (Resp.'s Ex. P, App. for Cert. 8-9.)

At no time did Kakugawa raise this claim as a federal
claim to the state courts.  He neither referred to the United
States Constitution nor asserted any theory based on federal law
to support this claim.  His citation to three state cases[15] was
clearly for their explication of state law, and not for any
federal principle they also might embody.  Kakugawa did not file
a Reply, and otherwise makes no attempt to rebut the presumption
that this failure to fairly present these claims was not knowing
or intelligent, or was due to extraordinary circumstances beyond
his control.

When Kakugawa filed his federal petition, or if he were

---

[15] Kakugawa cited: *State v. Cabasag*, 64 P.3d 278, 281 (Haw.
App. 2003) (defining accomplice liability); *State v. Soares*, 815
P.2d 428, 430 (Haw. 1991) (defining Haw. Rev. Stats. § 702-222,
Hawaii's accomplice liability statute); *State v. Brantley,* 929
P.2d 1362, 1371 (Haw. App. 1996) (same).

to attempt to now go back to the state court and raise this issue as a federal claim, he would be precluded from doing so by Haw. R. Penal P. 40(a)(3), as either previously ruled upon under state law, or knowingly and intelligently waived.[16]  *See Cassett*, 406 F.3d at 621 n.5 (finding that, where a prisoner failed to present his claims to the state courts, his unexhausted claims may be procedurally defaulted, likening the procedural default to technical exhaustion) (citations omitted); *Sandgathe*, 314 F.3d at 376.

Pursuant to a Hawai`i's procedural rules, a return to state court to exhaust these claims would be futile.  *See Teague v. Lane*, 489 U.S. 288, 297-99(1989); *Coleman*, 501 U.S. at 735 n.1 (stating that a claim is procedurally defaulted when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  As such, this claim is procedurally defaulted in state court.

Kakugawa fails to set forth any reason for his failure to raise this claim as a federal issue, or show that there was some objective external factor that impeded him from doing so. He cannot claim State interference for his failure to present

---

[16] Kakugawa was represented by counsel on direct appeal; thus his failure to raise the claim as a federal question is deemed knowing and intelligent.

this claim in a procedurally proper manner, as he was able to file his direct appeal through to its conclusion at the Hawai`i Supreme Court.  It is clear that this claim does not rely on new and previously unavailable facts or legal theories, not present when he directly appealed.  As detailed above, he fairly presented as constitutional issues at least three of his other claims, demonstrating that he was competent to do so for all of his claims.  Kakugawa has failed to demonstrate cause for his procedural default of this claim, and the court need not consider prejudice.

          Kakugawa also fails to establish that this claim requires federal review to prevent a fundamental miscarriage of justice.  This exception "applies only when a constitutional violation probably has resulted in the conviction of one actually innocent of a crime and petitioner supplements his constitutional claim with a colorable showing of factual innocence[.]" *Casey*, 386 F.3d at 921 n.27.  To establish actual innocence a petitioner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence . . . .  Given the rarity of [reliable] evidence [of actual innocence], in virtually

every case, the allegation of actual innocence has been summarily rejected.") (internal quotation marks and citations omitted).

As addressed supra, § A(2), the evidence before the circuit court was more than sufficient to convict Kakugawa of second degree murder and attempted murder.  This is not the rare case presenting an inference of actual or legal innocence.  As such, this court finds that Ground Three is procedurally barred from federal review and recommends dismissing it with prejudice.

    4.   <u>Ground Five: Sua Sponte Recusal of Judge Milks</u>

In Ground Five, Kakugawa alleges that the circuit court violated his rights to due process and to a fair and impartial trial by failing to recuse itself.  Kakugawa bases this claim on his belief that Judge Milks could not remain impartial in his trial after she presided over the jury trial of his co-defendant, Lamaar Richardson.

Kakugawa did not present this issue as a violation of his federal constitutional rights to due process or to a fair and impartial trial to the state courts.  On appeal Kakugawa simply argued that Judge Milks's failure to sua sponte recuse herself violated Canon 3(E)(1) of the Hawaii *Code of Judicial Conduct* (Rev. 1992).  This is insufficient to alert the Hawai`i courts that he was also raising a federal claim.

As detailed above, § II(B)(3), Kakugawa cannot return to state court and raise this claim again, now arguing a federal

basis, nor could he have done so at the time he filed this petition.  He again fails to present any reasons justifying a finding of cause or prejudice to excuse his procedural default of this claim.  Nor is this claim a claim of actual, or even legal, innocence.  The court finds that Kakugawa procedurally defaulted this claim in the state court and it is now procedurally barred from federal review.  The court recommends that Ground Five be dismissed with prejudice as procedurally barred.

      3.   <u>Ground Six: Ineffective Assistance of Counsel</u>

      In Ground Six, Kakugawa claims that his trial counsel was ineffective, by convincing Kakugawa to waive his right to a jury trial, and for other unspecified "mistakes and misinformation" which cumulatively denied him his right to effective assistance of counsel.

      On direct appeal of this claim, Kakugawa explicitly argued that the federal standard of review for ineffective assistance of counsel claims, as set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), requiring a showing of actual prejudice, as opposed to speculative or possible prejudice, did not apply to his case.  (*See* Resp.'s Ex. P, Petr.'s App. for Cert. 11-12.)  The Hawai`i Supreme Court agreed, and reversed the ICA's decision insofar as it had held that Kakugawa must show actual versus possible prejudice with regard to his ineffective assistance of counsel claim.

37

The supreme court went on to hold that Kakugawa's
attorney made a tactical decision to advise Kakugawa to forgo a
jury trial, based on Judge Milks's pre-trial statement that the
facts before her prior to trial did not appear to be sufficient
for a murder conviction.  The supreme court stated that tactical
decisions made by attorneys in hopes of bettering their clients
chances are within the judgment of counsel, like trial strategy,
and are "rarely second-guessed by judicial hindsight."  (Resp.'s
Ex. R., Hawai`i Supreme Court SDO at 13, quoting *State v. Richie*,
960 P.2d 1227, 1247-48 (Haw. 1998).)

In his application for certiorari with the Hawai`i
Supreme Court, Kakugawa explicitly rejected the federal standard
of review for ineffective assistance of counsel claims, requiring
"actual prejudice" resulting from the attorney's alleged acts or
omissions, in favor of the more lenient Hawai`i standard.
Kakugawa argued that Hawai`i's two-part test[17] used to establish
ineffective assistance of counsel was the only applicable basis
for review.  (*See* Resps.' Ex. P, Pet. App. for Cert. 11).  In
Hawai`i, whether a defense is potentially meritorious "requires
an evaluation of the possible, *rather than the probable*, effect

---

[17] For ineffective assistance of counsel claims, Hawai`i
requires a showing "(1) that there were specific errors or
omissions reflecting counsel's lack of skill, judgment or
diligence; and (2) that such errors or omissions resulted in
either the withdrawal or substantial impairment of a potentially
meritorious defense." *State v. Fukusaku*, 946 P.2d 32, 50 (Haw.
1997).

of the defense on the decision maker . . . no showing of 'actual' prejudice is required[.]" *Fukusaku*, 946 P.2d at 50.   In doing so, Kakugawa, for obvious tactical advantage on appeal, purposely failed to present his ineffective assistance of counsel as a federal claim.   In substantially similar circumstances, the Ninth Circuit held that a petitioner's ineffective assistance of counsel claim was not fairly presented because petitioner, rather than "simply claim[ing] in his petition that he had been denied his constitutionally guaranteed right to counsel and then cit[ing] to [state] cases," used catch phrases for state law *inadequate* assistance of counsel, which the Ninth Circuit interpreted as a strategic choice by petitioner's counsel to ground his claims on state rather than federal law bases.   *See Peterson*, 319 F.3d at 1158; *see also Casey v. Moore*,  386 F.3d 896, 912 n.13 (9th Cir. 2004).

     As discussed supra, Kakugawa cannot raise this claim again to the Hawai`i courts, framing it as a federal issue.   Nor would that be to his advantage, as the Hawai`i courts have already held that his claim does not withstand the more lenient state standard of review; it would not, therefore, prevail under the more stringent federal standard.   Kakugawa presents no compelling argument supporting a finding of cause or prejudice for this failure, nor does the actual innocence exception apply to this claim.   The court FINDS that this claim is procedurally

barred from federal review, and RECOMMENDS that it be dismissed with prejudice.

## IV. CONCLUSION

Based on the foregoing, this court FINDS that all claims in the Petition are either actually or technically exhausted; that Grounds One, Two, and Four are without merit and should be DENIED; and that Grounds Three, Five and Six are procedurally defaulted in the state courts, procedurally barred from review by this court, and must be DISMISSED. Accordingly, the court RECOMMENDS that the Petition be DENIED with prejudice.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, October 18, 2007.



Kevin S.C. Chang
United States Magistrate Judge

KAKUGAWA v. ADAMS; CIV. NO. 07-00337 SOM-KSC; FINDINGS AND RECOMMENDATION; dmp/ Habeas 07/ Kakugawa 07-337 (act. & tech. exh; dny)